Case number 19-3266, Western Missouri, Ria Schumacher v. SC Data Center. Good afternoon. May it please the Court, my name is Amy Brooks. I represent the appellant, SC Data Center, which for ease in reference, I'm going to refer to as the company. No concrete harm, no standing. That is a quote from the United States Supreme Court's most recent case regarding FCRA and standing, which is new enough that it's not cited in the party's briefs. That case is TransUnion LLC v. Ramirez, 141 Supreme Court 2190, decided in June of this year. Based on Spokio and TransUnion, no matter whether the company here violated the procedural provisions of the FCRA or not, the evidence in the record shows that Ms. Schumacher did not suffer any concrete injury. I'm going to divide my argument into two parts. First, I'm going to address Ms. Schumacher's argument that she suffered an injury as a result of the company rescinding her conditional job offer after a telephone call and a pre-adverse action notice letter. And the second part will be to address the other alleged intangible injuries that Ms. Schumacher argues establish a concrete injury, such as a breach of privacy. So as to that first point, Ms. Schumacher argues that she was not injured by not being given the opportunity to what is basically confess and avoid under the FCRA. Setting aside that the letter from the company, which is in the record, did give her that opportunity before it was going to make a final decision, and with all due respect to the Third and Seventh Circuits, the purpose of the FCRA is not to give applicants the opportunity to confess and avoid. That's what laws like Ban the Box or arrest and conviction record discrimination laws do. Those types of laws are designed to give applicants the chance to explain away black marks on their records before employment decisions are made. In comparison, quoting the TransUnion case, the FCRA seeks to promote fair and accurate crediting reporting and to protect consumer privacy. Its purpose is not to give applicants the chance to try to explain away why, for example, in this case, Ms. Schumacher lied on the application, and then when faced with a 100% accurate criminal report, wants to be able to explain it away. Additional parts of that TransUnion case support this conclusion that an adverse action here is not a concrete injury. The TransUnion court said, central to assessing concreteness is whether the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts, such as intangible harms like reputational harm or disclosure of private information or intrusion on exclusion or a constitutional harm, but none of those types of harms are present in this case. Why doesn't your argument go really to the merits? I mean, I know what you're saying. There's no right here, but it seems to me that Congress could very well have been, as you noted, a couple of the circuits have pointed out, protecting the individual person's ability to respond to this pretty personal record, which is this consumer report, before an adverse action is taken. Because otherwise, why do it? And so it seems to me that what your argument does is jump to the merits by saying, well, she didn't have any defense to this or she couldn't have explained it away. But that seems to me to be the next step in the progression of this particular claim. But, Judge, in this particular claim, I think that, first of all, as to those other courts, those were pre-transunion, and I think that the circuits were actually expanding or indicating that Spokio was a very narrow ruling. And the Supreme Court stepped back in and, in the transunion case, explained exactly this type of analysis. Because even though, in one sense, you'd say, okay, is there a technical violation? That would go to the merits. But this is exactly the type of analysis that has to be done in order to determine if there is an actual concrete harm. And in this case, we're at a factual assessment, and Ms. Schumacher conceded that the information was accurate. So if she had a chance, if the letter gives her the chance to dispute the information, she didn't dispute the information, and the information is accurate, then all three of those factors are relevant to whether she has any harm. What if she alleges that had I, and we're assuming that the factual determination by the district court is accurate, that this was a rescission of the offer before she got the opportunity to look at this report. So what if, in this lawsuit, she had actually alleged, and I would have responded to this, and I would have had some ways to explain it. Is that enough for a harm for purposes of standing? No, judge, I don't think it is. I think for two reasons. Number one, with all due respect to the district court judge, the facts are, frankly, the evidence is undisputed. It says that the company called her and said, we're rescinding, and you're going to get a letter, and then sent a letter, which says we're not going to make our final decision. All right. Okay. So for purpose of this question, all right, let's assume that the district court is accurate, that they rescinded the offer before giving her the opportunity to look at the report. And in this case, she said, look, they took adverse action before I could look at this report and respond, and I would have had some things to say about that. I could have explained some of that. Is that enough to at least get standing, putting the merits aside as to what would ultimately happen? Right. I don't believe so, judge, because, again, first of all, if the information that had been requested, let's say, was consumer credit information that no one can get, that's not available publicly, and she never knew about the information and was never given a copy of the report, then in that hypothetical, perhaps that would be sufficient to confer standing, because that's one of the purposes that the FCRA is designed to protect. That would be akin to an invasion of privacy case. But here the report is in the record, and if you look at the record, the report is simply criminal information. That is it, which is publicly available and which is accurate. So there is no harm for her to say, because also the company, by the way, said she would never be able to start employment between the time period of the call and the letter. And so there's no harm there either. It's not that she could have started and had some wage loss. So in each one of these cases, you would have to look to see what it was that the employer, the company in this case, relied on to take the adverse action before we would know about standing? Because you've given an example of information that would not be publicly available on her credit. I think so, yes, judge. So we'd have to look at the merits of the case to determine whether she has that. That just seems merit focused. I think it's practically impossible to separate the analysis of harm from the analysis of the merits. Because if you look, for example, at the transunion case, in that case, the Supreme Court was looking at the merits of what information the transunion, the credit reporting agency held and released and determined that it was inaccurate information. And by that concluded that that nature, that harm was in the nature of a reputational harm like defamation. And so. So I think that's they're related, but I think it's absolutely necessary to look at the type of the type of the information. I want to ask a question that likely has a very simple answer, and I'm just not smart enough to have figured it out. But as I look at this case, it's been settled as a class action. And as a general principle, a class doesn't fail because a class representative appears to lack one of the necessary attributes to be a class representative. Now, there's a whole mess of other people in this class, but no discovery was ever done to figure out who they are. No one discovery was ever done to figure out what the exact nature of their claims are. But if we look at like count one, the adverse action violation, I understand that you're saying there that that would never be enough because that's always a process claim. But I'm looking at count two and that that might, in fact, be a little little more broadly amenable to some sort of claim that survives trans union. And I'm trying to figure out why. Why? And count three, the improper authorization. That could be there could be concrete injury there in these other cases. I think foreseeably. And my question is, why are we focused entirely on the Schumacher in this case once it's been certified as class? Because she is the only named plaintiff. And and judge, I believe, trans union talks about that there must be standing by the representative named plaintiffs in order to confer standing for the class. And so, frankly, given the given the posture of this case, I mean, this case settled early on in the in the in the process. We went to an early resolution dispute resolution process and settled for not a great deal of money in the grand scheme of things. And the class itself was never, ever really defined. The judge started off saying, well, for the purposes of this settlement, I'll certify the class. But the class has never really gone through the whole certification process. And and I mean, it just strikes me. This is a very it just seems odd that that where we're at. And I maybe maybe I'm just colored by my years as a trial judge looking at the cases I saw. And judge timing why procedurally the timing is instructive on this point, too, because there was the conditional settlement that was reached based on approval. Then immediately after, because Spokio was released, the defendant filed the motion to dismiss and the judge denied that request denied a request for interlocutory appeal and said, no, I'm going to force you to go through the class certification approval process. And the the settlement approval process. And so only after all that happened, did we take this case up on appeal the first time? Yeah, I got that. But I was sort of surprised that there was never an objection raised to the to the approval of the settlement. Right. And I mean, no kind of when I read the transcript, it just kind of seemed kind of plain vanilla for somebody who had obviously been pounding the table before. And they took the appeal and pounded the table afterwards that there was no comment made to kind of preserve those issues. I believe in in in every single brief on that issue, we dropped a footnote which said we think that the court is without jurisdiction to hear this. But we're being instructed to go through this process. And so I don't believe there's been a waiver there. But that is the the reason the procedural history is the way it is. Yeah. And I know it's in the briefs. I was just surprised that it didn't turn up in the transcript when you showed up to go through the approval process. But that's either here or there. All right. I most of my time I can't I'm sorry, I can't see the top of my clock. Does that say one fifty five? Yes, it does. So because most of my time has been taken with answering questions, I'm going to reserve the rest of the time for rebuttal. You may. Mr. Watkins. Thank you. Jason Watkins, on behalf of the plaintiff, the proper standard on defendants. One motion today on all legal issues is de novo. Any factual decision made by by by Judge Lowry is clearly erroneous. The F.C.R.A. was created in the 1970s to regulate consumer reporting agencies and the accuracy of their consumer reports. And that's where Section 1681 E.B. that both Ramirez and Spokio spoke to was the accuracy portion that regulated consumer reporting agencies. In the 1990s, Congress recognized that employers were using consumer reports within the hiring process. So we created specific notice protections and they're both implicated in the in the lawsuit. Section 1681 B.B. to require a clear and conspicuous disclosure that consisted solely of the disclosure. That way, the consumer was placed on notice of the intrusion into their personal information. And that consumer had the opportunity to authorize that intrusion. Section 1681 B.B. three, the adverse action said before an employer is going to take an adverse action based in whole or in part on a consumer report. They had to first provide a copy of the consumer report. And then they were also given a reasonable opportunity to address the information within the honors. I'd like to start off by focusing on the disclosure and authorization plan. And the form that I would like the court to know is in appendix zero ninety one. This is the form that the defendant admitted in its answer was a form to gain authorization. And further, this is the form that Judge Lowry found in her non-contested facts that the defendant used to achieve the disclosure and authorization. And I'm going to go in there and I want to point out the alleged disclosure and the alleged authorization. And I point them out because, as you'll see, if you look at the form, it's in six point font. And Judge Lowry described this form is not clear and misleading. So the very first sentence is the alleged disclosure. And it says we have the intent to utilize sterling info systems to conduct a criminal background search. You'll notice that's limited to a criminal background search. Then if you go to paragraphs underneath the address chart, you'll find what they allege is the authorization. And there it says I authorize the company and its representatives to make an independent investigation of my criminal records. There we are limited once again to criminal records. And finally, I'd like the court to take note that under the name line, above the address box, and then in the first paragraph after the address box, the defendant places a temporal scope of seven years on the disclosure and authorization. The defendant drafted this form. The defendant drafted it to narrowly restrict to criminal searches only and only go back seven years. Unfortunately, that's not what they did. They procured a consumer report. I know they've told you all along all we got was a background check or a criminal history, but that's not right. In fact, if you'll look at the consumer report itself, you'll see the first two sections there are accounting criminal record and a nationwide criminal search. And both of those say clear and complete because those were done within the parameters of the disclosure. They went back seven years. They checked the address that she provided.  And it says clear and complete. So if they had done what they disclosed and were authorized to do, we wouldn't be here today because she would have the job. Unfortunately, that is not what happened. Instead, what happened is they went on and they were in civil searches. The first civil search I want to talk about is that sex offender search. And Judge Lowry herself found that this was a civil search. And why did she find that? Because the document itself calls it that. In fact, it calls it a non-criminal background check. Now, I know that the defendant has argued in the past that the sex offender search, there's no harm from it because it found nothing. But that's not what this court found in Breitbart. In Breitbart, this court found that where the defendant lawfully obtained the personal data and did not use it in any way that violated consent, there was no harm. Unfortunately, that's not what happened here. What happened here is akin to a common law trespass. They intentionally entered into the plaintiff's property without her consent. If this was something that we could see, it'd be easier to understand. So I'm not very good at analogies, but I'm going to go ahead and throw one out for you all. I own a farm. The farm next to me, the guy has to get to the backside of it to hunt. He has to trespass onto my property. So I gave him limited permission to go ahead and trespass on my property to get to the backside to go hunting. If I find that individual looking into the window of my house, he doesn't have consent for that. My rights have been violated at this point. That's essentially what the defendant here did. They had permission to do a criminal background check that went seven years. Instead, they went and looked in the windows of her data, and they went and did civil searches. And unfortunately, that sex offender search is not the only civil search they performed. They also performed a Social Security number trace and an address history trace. Now, I know Judge Lowry said, well, both of these two searches led to criminal history. Yes, they may have led to criminal history, but they in themselves are civil searches. They are civil searches that were not disclosed. They are civil searches that were not authorized. This court in Auer said that an invasion of privacy is a concrete harm, but that consent can be a bar to it. In Auer, the plaintiff pled that she understood a background check was going to happen. She understood the form. She understood that the defendant was going to get a background check. That is not what's pled here. In fact, Ms. Schumacher pled that she was never told a consumer report would be procured. The form never uses the term consumer report. It only uses the term criminal background check or criminal records. As this court found in Auer, that's an invasion of privacy. It went beyond her consent. She didn't know that was going to be done. Counsel, would there be anything in a sex offender search that wasn't in a criminal record search? Is that an overlapping category? Yeah, it is, Your Honor. Unfortunately, it is an overlapping, but you could be in a sex offender search and not have criminal history. I used to be a prosecutor. Occasionally, we would defer things, or an individual here in Missouri would get an SIS. They'd walk it clear, and then that's a sealed record. It wouldn't have showed up in your criminal records, but it would show up on the sex offender search, Your Honor. Yes, you could run that civil search and find that individual's name. You could have ran the criminal search and not had any indication of that taking place. Yes, Your Honor. While they may overlap, there is instances where the criminal search is not going to show it. Your Honor, I would point this court's attention as well to the case of American Farm Bureau v. the EPA. And there, this court found that where the EPA released address history without consent, there was a concrete harm. And that was consistent with what this court found as well in Hagelin v. Aitlin County, where this court said that the search of an individual's personal information without consent is a concrete harm. Now, I know counsel spoke to, well, this is all publicly available information. But, Your Honor, American Farm Bureau spoke to that as well. It said that the information about a particular owner might be obtained through publicly available sources does not preclude a substantial privacy interest. In fact, it went on to talk about how when you put it into a consumer report, you essentially deliver it up on a silver platter. So instead of having to go scour the Internet to find all this public information, you combine it into a consumer report. And that's exactly what they did here without giving Ms. Schumacher notice. If they gave her notice, we may not be here because she may have told them something different, which brings me to the adverse action claim. And the first thing I want to address is that this report is 100 percent accurate. I make mistakes. I made that statement. There is nothing factually in this record that this is 100 percent accurate. That was my statement in the original transcript. I was wrong. I tell my kids to admit all the time. When you're wrong, admit it. I was wrong. So what we pled was she was given a job offer by the defendant. They then procured a consumer report on her. Judge Lowry found that she knows it took place because the document itself, the disclosure document, reads, We have the incentive to utilize Sterling InfoSystem to conduct a criminal background search. The search will only be conducted once an offer of employment has been made. Not a conditional offer. This is their document. This is what they drafted. It says once an offer of employment has been made. That's the only time they're going to run a search. And then if you look at the top of the consumer report, which is Joint Appendix 106, you'll see offer rescinded. Somebody wrote that on the consumer report. It doesn't say conditional offer. It says offer, and it was rescinded. Next thing that we pled beyond that was that she received a phone call. And on the phone call, they told her, Sorry, we got your background check back. We're withdrawing the offer. You'll get a letter that says the same thing here in a little while. We allege that that took about two weeks. We know it took place like that because in the defendant's answer, we have the following avertment. Defendant contacted the plaintiff by phone about one week prior to her start date, informed the company it was withdrawing the offer of employment. And the letter would follow. And she admits she admitted that allegation.  It seems like the plain language of that letter indicates that no final decision had been made because they were going to give an opportunity to respond once the letter had been received. Your Honor, Ms. Schumacher received a phone call and told her the job offer was withdrawn and a letter that states the same would follow. She alleges two weeks later, she finally got the copy of the consumer report. The law says she has to have it before, not two weeks later, not two days, not two weeks, not two months, not two years. That's too late. All that because Congress recognized that you have to give it to her before. Because as Judge Lowry recognized in the lower court, citing to the United States Supreme Court, she said, the only meaningful opportunity to invoke the discretion of the decision maker is before the adverse action takes place. Your Honor. So when she got that phone call and they told her, hey, sorry, we're withdrawing the job offer. It was too late at that point because Congress had drawn it up under 1681 BB3A that she had to have that consumer report before. That way she could address the information. And it's that loss of the opportunity that this court recognized in citizens that caused the concrete harm. Counsel, how did she have a loss of opportunity when the letter that she received said you still have an opportunity to respond? Your Honor, by the time she received that letter two weeks, she had already moved on to go get another job. Are we expecting consumers to put their life on hold until they get the letter from the employer? Ms. Schumacher was trying to find work. So she went on and found another job. So by the time she gets that letter, she's moved on in her life. Your Honor, I think the bigger thing that we need to focus on here is because she didn't get the consumer consumer report prior to that phone call. She lost the opportunity to contest it. And the reason I'm I'm making such a point about that is this court recognizing citizens that the loss of an opportunity is a concrete harm. And I know in the papers, defense counsel has pointed out citizens ain't an MCRA case. And I agree with that. It's not. But what it does show is that this court recognizes the loss of an opportunity to contest is a concrete harm. And that's exactly what both the third and the Seventh Circuit's found. Both of those cases decided an MCRA adverse action case, and they found that the loss of the opportunity caused a concrete harm. And, Your Honor, I want to read a quote prior to showing some facts to the court real quick. The quote is from the Seventh Circuit, and it says that Robertson has not pled what she may have said if given the chance to respond, that she may not have convinced Allied to honor its offer is immaterial to the substance of her interest in responding. Article three strictures are met not only when a plaintiff complains of being deprived of a benefit, but also when a plaintiff complains she was deprived of a chance to obtain a benefit. And then it goes on to discuss, as defense counsel discussed, confession and avoidance. Your confession and avoidance would have been huge in this matter. And it's the reason why I started this part of my argument. I'll tell you how wrong I was about 100 percent accuracy. Because if Miss Schumacher had had that opportunity before being told, you no longer have a job. She would have told the employer story. She would have said, yeah, I was convicted at 17 of murder of armed robbery. And I was sentenced to 35 years in jail. Twelve and a half years later, the judge overturned the sentence, found a lack of evidence and let me out. Now, that's not in the complaint, though, right? That is not in the complaint, your honor. But what I would tell you is this. There are facts that lead to that conclusion. I joined Appendix 123, which is a newspaper article that the defendant went out and sought and put into the record. That newspaper article says that the plaintiff or the plaintiff would have to complete 25 years and six months before she would be eligible for parole. That puts her eligible for parole in February of next year. So I think everybody can agree something changed here. So is it the facts in the record that twelve and a half years later she got out? No, it isn't, your honor. But the facts that are in the record show that she should still be in prison, not even eligible for parole right now. If something happened to happen. She would have told this court that her layperson understanding when she got let out at twelve and a half years was that they found that she was not involved and the lack of involvement allowed her to get out. Your honors, that is confession in avoidance to the team. That is the reason that Congress understood in Section 1681. B.B. three. A. You have to give it to him before. Congress knew what they were doing, because if you look at the very next part of the statute, 1681 B.B. three B. Any job covered by the secretary of transportation. They don't have to give it to them before they can give those consumers the report after. So Congress knew how it drafted this law. And the Seventh Circuit said that. In fact, the Seventh Circuit went on to find that the providing a context to information in a consumer report may be more valuable than accuracy. And that's exactly the case before this court today. Because while you may be able to say technically at one point that consumer report would have been accurate. We can all agree she'd be in prison until February if it was accurate because it shows thirty five years in prison. And we all know in 2015, she applied for a job with the defendant. And that's what brought us before this court today. Your honors. I'd like to ask this court to find that both claims have a concrete harm. I'd like to ask this court to require the defendant to pay the settlement amount, the settlement amount with interest that was agreed to over five years ago. And the last thing I'd like to point out is I think it was your honor. Erickson asked about the process for the adverse action and he was worried about the class. This is all done on a process. It's the same process that's applied to everybody. So if Miss Schumacher has a harm, everybody in the class has a harm. Same disclosure and authorization form. Same adverse action policy. Thank you. Your honors. Thank you. Thank you. Yes. Thank you. I'd like to address a few comments that opposing counsel made. I would like to clarify that, that the the FCRA is not a confess and avoid statute. It's a I have the ability to dispute the accuracy of information statute. And in this case today, not in the briefs, not in the district court, not in the last oral argument. I have never heard any evidence from the plaintiff's perspective that this report is anything but 100 percent accurate publicly available information. So respectfully, I think that that ship has sailed. The judge offered the district court judge offered the plaintiff the opportunity for an evidentiary hearing, which she declined. And she didn't submit any evidence in support of these claims as to accuracy. The second point I'd like to raise is about Robertson. Robertson is the Seventh Circuit decision. But in the Robertson case, there was no letter. There was no provision of the report at all, which is why. And I think wrongfully, the Seventh Circuit decided, but that's why the Seventh Circuit decided that the the plaintiff had suffered a harm because no report and no letter had ever been provided. A couple of other things. The the Citizens Telecommunication Act is very distinguishable. Not only is it a different law, but it relates to regulatory rulemaking. And the harm there was that the petitioners did not have a chance to oppose a rulemaking process. And then lastly, Mr. Watkins raised the Breitberg and our cases from the Eighth Circuit. And both of those cases found that even though there were technical violations that in Breitberg, the the charter, the cable company had kept personal information without telling the plaintiffs because it was never used to their harm. There was no injury. And likewise, in our, even though there wasn't a proper disclosure form, the employer gathered a a consumer report. But because it was because she had signed the authorization form and and the court found that she had understood it, there was no allegation or evidence that she was confused or distressed or relied on the information in any way that our said that that standing was lacking as well. And one last point in TransUnion, the court talked about the lack of evidence by a plaintiff that they failed on these types of informational injuries, that they failed to present evidence that they were confused or distressed or relied on the information in any way. But that lack of evidence by the plaintiffs, and actually it wasn't the named plaintiffs, but it was the class members, Judge Erickson, that defeated their claim that they had injury, a concrete injury, and therefore lacked standing. Thank you. Thank you to both counsel for your argument here today and for your briefing on the case and we'll take the matter under advisement.